UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| POSH BEAUTY GROUP LLC as successor in interest to NEW LOOK LASER MEDICAL FRANCHISING, INC. d/b/a SKINOVATIO, | Civil Action No. 1:25-cv-13787 |
| Plaintiff, | |
| v. | |
| MT & ZU VENTURES LLC, FAHAD ZUBERI, ANOOP MUMTANI, and SAAD ZUBERI, | |
| Defendants. | |

**PLAINTIFF POSH BEAUTY GROUP LLC AS SUCCESSOR IN INTEREST TO NEW LOOK LASER MEDICAL FRANCHISING, INC. d/b/a SKINOVATIO's MOTION AND MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION AND REQUEST FOR TEMPORARY RESTRAINING ORDER**

I.    **INTRODUCTION**

The instant motion for temporary restraints and preliminary injunctive relief is brought before this Court for a single reason: Defendants continue to unlawfully operate a Skinovatio-branded medical spa at the South Loop location despite clear termination of their franchise rights. They have misappropriated Plaintiff's Marks and system, and failed to make monthly royalty payments under the Franchise Agreement (among numerous other defaults).

Defendants' conduct strikes at the heart of Plaintiff's goodwill and franchise system. Without immediate injunctive relief, Defendants' ongoing operation under Plaintiff's brand will cause irreparable harm to Plaintiff's reputation, franchise network, and prospective franchise relationships.

II.    **FACTUAL BACKGROUND**

Plaintiff Posh Beauty Group LLC, as successor in interest to New Look Laser Medical Franchising, Inc. d/b/a Skinovatio ("Plaintiff" or "Skinovatio") initiated this action on September 25, 2025, asserting claims for breach of the Franchise Agreement, trademark infringement, and other related claims against Defendants. See ECF No. 1.

**The Skinovatio Medical Spa System and Trademark**

Skinovatio is an established medical spa chain offering skin rejuvenation centers to the public. See Verified Complaint ("VC"), ¶ 10. Skinovatio licenses others to use its federally-registered trademark, SKINOVATIO MEDICAL SPA that is the subject of U.S. Trademark Registration Number 5905077 (the "Skinovatio Mark"), in the sale of goods and services. See VC, ¶ 11. Through the expenditure of time, skill, effort, and money, Skinovatio is the sole owner and has developed the Skinovatio Mark, which have been used in the development, organization, and operation of a System of medical spas offering skin rejuvenation services to the public. See VC, ¶ 12.

1

Skinovatio has entered into franchise agreements for the right to sell certain products and services utilizing the Skinovatio Mark at various locations throughout the United States. See VC, ¶ 13. Skinovatio goes to great lengths to keep their trade secrets and proprietary information secret and out of the hands of the general public. See VC, ¶ 14. The foregoing registration is valid, subsisting, in full force and effect, and cover the goods and services identified in the registration certificates. The registration is incontestable under the Lanham Act, 15 U.S.C. § 1065. See VC, ¶ 15; see also VC, Exhibit A. The Skinovatio Mark has been used exclusively by Skinovatio, and its designated franchisees, in commerce in connection with the operation of Skinovatio businesses since November 2019. Since that time, Skinovatio has grown to nine (9) locations in multiple states (including the South Loop Location). See VC, ¶ 16. The Skinovatio Mark has become a valuable asset of substantial and inestimable worth to Skinovatio. The Skinovatio Mark is a symbol of quality experience provided by Skinovatio. Skinovatio has a vital economic interest in protecting its name and the Skinovatio Mark. The preservation and protection of its name and the Skinovatio Mark are essential to the maintenance of the quality of Skinovatio business, and the goodwill and reputation associated with them. See VC, ¶ 17.

**Defendants Entered into the Franchise Agreement and the Owners' Guaranty Thereto**

On or about October 27, 2022, Skinovatio entered into a Franchise Agreement (the "Franchise Agreement") in connection with the operation of a Skinovatio spa at 1136 S Delano Court, Suite E201, Chicago Illinois 60605 (the "Formerly-Franchised Business" or the "South Loop Location"). See VC, ¶ 18; see also VC, Exhibit B. On the same date, the Guarantors signed the Owner's Guaranty and Assumption of Developer's Obligations (the "Guaranty"), annexed as Schedule 3 to the Franchise Agreement. See VC, ¶ 19; see also VC, Exhibit B, at Schedule 3. During the term of the Franchise Agreement, Skinovatio agreed to provide Defendants with a license to use Skinovatio's system and trademarks in connection with the operation of a Franchised

Business and to provide Defendants with certain assistance, products, supplies, materials, and manuals. See VC, ¶ 20.

**Default and Termination of the Franchise Agreement**

In at least March 2025, Defendants became in default of the Franchise Agreement by, among other things, failing to make royalty payments for the months of November 2024, December 2024, January 2025, February 2025, March 2025, April 2025, and May 2025. See VC, ¶ 21. MT & ZU also failed to provide Skinovatio with its required financial statements in violation of Section 12.3 of the Franchise Agreement during the same time period. See VC, ¶ 22. Skinovatio's numerous attempts to address Defendants' non-payment included, but was not limited to, a Notice of Default on May 12, 2025 (the "Default Letter"). See VC, ¶ 23; see also VC, Exhibit C. Despite being provided with ample notice and opportunity to cure pursuant to the Franchise Agreement, Defendants failed to cure their defaults. See VC, ¶ 24. Accordingly, on June 19, 2025, Skinovatio through counsel sent Defendants a Notice of Default and Termination of Franchise Agreement (the "Termination Letter"), wherein Plaintiff validly terminated the Franchise Agreement pursuant to Section 10.2.1 of the Franchise Agreement. See VC, ¶ 25; see also VC, Exhibit D.

Between June 19, 2025 (the date of the initial termination letter) and September 19, 2025, the Parties engaged in settlement discussions to potentially amicably resolve this matter. Those discussions were conducted with an express reservation of all rights under the Franchise Agreement. See VC, ¶ 26. When settlement failed, Plaintiff, through counsel, sent Defendants written confirmation of termination on September 19, 2025 (the "Termination Confirmation"). See VC, ¶ 27; see also VC, Exhibit E.

As a result of the valid termination of the Franchise Agreement, Defendants have numerous post-termination obligations they must fulfill (the "Post-Termination Obligations"), including, but

not limited to:

    (a) immediately cease to operate the Franchised Business and not thereafter, directly or indirectly, represent to the public or hold itself out as a present or former franchisee of Franchisor;

    (b) cease to use the Trade Secrets or other Confidential Information, the System and the Marks, including, without limitation, all slogans, symbols, logos, advertising materials, stationery, forms, and any other items which display or are associated with the Marks;

    (c) take such action as may be necessary to cancel or assign to Franchisor, at Franchisor's option, any assumed name or equivalent registration filed with state, city, or county authorities which contains the name "Skinovatio Medical Spa" or any other Mark, and You shall furnish Franchisor with evidence satisfactory to Franchisor of compliance with this obligation within thirty (30) days after termination or expiration of this Agreement;

    (d) pay all sums owing to Franchisor and any Affiliate, including all damages, costs, and expenses. These include, but are not limited to, reasonable attorneys' fees, with respect to litigation, arbitration, appellate, or bankruptcy proceedings, unpaid Royalty Fees, loss of future Royalty Fee payments incurred by Franchisor as a result of any early termination of this Agreement, and any other amounts due to Franchisor or any Affiliate; and

    (e) immediately return to Franchisor the Operations Manual, Trade Secrets, and all other Confidential Information, including records, files, instructions, brochures, agreements, disclosure statements, and any and all other materials provided by Franchisor to You relating to the operation of the Franchised Business (all of which are acknowledged to be Franchisor's property).

<u>See</u> VC, Exhibit B, at § 17.1.

As of the time of this filing, Defendants have continued to use the Skinovatio Mark in operating the Formerly-Franchised Business. A medical spa continues to operate at the address of the South Loop Location, which is still advertised on Google:



(Last visited October 31, 2025). See VC, ¶ 29.

Defendants' Formerly-Franchised Skinovatio spa is still advertised (as open) on Yelp as well:



(Last visited October 31, 2025).



(Last visited October 31, 2025). See VC, ¶ 30. Notably, a Yelp review from October 6, 2025

6

confirms that Defendants' Formerly-Franchised Business is still providing medical spa services:



(Last visited October 31, 2025). See VC, ¶ 31. Moreover, in furtherance of Defendants' violative efforts, Defendants are continuing to use a booking software, Vagaro, to book clients for their formerly-franchised Skinovatio spa:



(Last visited October 31, 2025). See VC, ¶ 32.

Defendants' failure to abide by the Post-Termination Obligations required under the

7

Franchise Agreement, and continued use of the Skinovatio Mark and Skinovatio system, in connection with the operation of a medical spa offering competitive products and services at the site of the Formerly-Franchised Skinovatio spa has caused, and is continuing to cause, irreparable harm. See VC, ¶ 33. Defendants have not voluntarily ceased their unlawful acts, thus necessitating the present lawsuit. See VC, ¶ 35.

### III.  LEGAL ARGUMENT

#### A.  Preliminary Injunction Standard

To obtain a preliminary injunction, a plaintiff must show that it has a reasonable likelihood of success on the merits and that it has no adequate remedy at law and will suffer irreparable harm absent a preliminary injunction. Stuller, Inc. v. Steak N Shake Enters., Inc., 695 F.3d 676, 678 (7th Cir. 2012); Turnell v. CentiMark Corp., 796 F.3d 656, 661–62 (7th Cir. 2015). To satisfy the "reasonable likelihood" element, "the plaintiff must show that it has a better than negligible chance of succeeding on the merits so that injunctive relief would be justified" (citations omitted). Lexington Healthcare Ctr. of Bloomingdale, Inc. v. Morrison Mgmt. Specialists, Inc., 2020 WL 1820522, at *3 (N.D. Ill. Apr. 10, 2020). Once satisfied that the plaintiff has made this showing, the court also considers the irreparable harm the defendant will suffer if preliminary relief is granted balanced against the irreparable harm the plaintiff will suffer if relief is denied and the public interest in granting or denying the preliminary injunction. Id. The Seventh Circuit has adopted a "sliding scale" approach, meaning that "the more likely the plaintiff will succeed on the merits, the less the balance of irreparable harms need favor the plaintiff's position." Ty, Inc. v. Jones Grp., Inc., 237 F.3d 891, 895 (7th Cir. 2001).

#### A.  Plaintiff is Likely to Succeed on the Merits of its Claims

##### 1.  Defendant is in Continuing Breach of the Franchise Agreement

Plaintiff is likely to succeed on its breach of contract claim. The Illinois Franchise Disclosure Act expressly defines "good cause" for termination by franchisor to include a

8

franchisee's failure to comply with lawful provisions of the franchise agreement after notice and an opportunity to cure. See 815 ILCS 705/19(b). The Franchise Agreement required Defendants to make monthly royalty payments to Plaintiff. See VC, Exhibit B, at § 3.2. Defendants failed to make royalty payments for seven consecutive months. See VC, ¶ 21. MT & ZU also failed to provide Skinovatio with its required financial statements in violation of Section 12.3 of the Franchise Agreement during the same period. See VC, ¶ 22; see also VC, Exhibit B, at § 12.3. Plaintiff provided Defendants with notice of these breaches. See VC, Exhibit C. These uncured breaches independently justified termination and confirm Defendants' disregard for their contractual duties.

In addition, Defendants have failed to abide by their post-termination obligations under the Franchise Agreement. Once terminated, the Franchise Agreement obligated Defendants to cease use of Plaintiff's Marks, refrain from operating a competing med spa business within the protected territory, and return or cease use of confidential and proprietary information. See VC, ¶ 28; see also VC, Exhibit B, at § 17.1. Defendants, however, continue to advertise themselves as "Skinovatio South Loop," use Plaintiff's Marks on signage and online platforms, and operate a competing business in violation of their non-compete obligations. See VC, ¶¶ 29-32.

Thus, Defendants' breaches of both their financial obligations and post-termination covenants under the Franchise Agreement justify injunctive relief. Plaintiff is likely to prevail on its breach of contract claims and is entitled to equitable enforcement of those covenants to protect its goodwill, Marks, and franchise system.

    2.  Defendants Are in Violation of the Lanham Act

Plaintiff is also likely to succeed on its Lanham Act claims. "Once a franchise has been terminated, the franchise cannot be allowed to keep on using the trademark." Gorenstein Enters., Inc. v. Quality Care-USA, Inc., 874 F.2d 431, 435 (7th Cir. 1989); see also Dunkin Donuts Inc. v.

Donuts, Inc., 2000 WL 1808517, at * 4 (N.D. Ill. Dec. 6, 2000) ("Where a franchisee materially defaults under a franchise agreement and that agreement is validly terminated – yet the franchisee continues to use the marks and trade name without the franchisor's consent – such continued use is unlawful under the Lanham Act" [citations omitted]).

Here, Defendants' right to operate a Skinovatio-branded location was validly terminated on June 19, 2025, and reaffirmed on September 19, 2025. See VC, Exhibits D and E. Nonetheless, Defendants continue to hold themselves out as a Skinovatio franchisee, including through signage and online listings such as their Google Business profile. See VC, ¶¶ 29-32. By continuing to use the Skinovatio Marks in connection with identical med spa services, at the very same location, Defendants are unlawfully trading on Plaintiff's goodwill and deceiving the public into believing their business remains an authorized franchise.

Consumer confusion in these circumstances is not speculative – it is inevitable. This Court has recognized that when a terminated franchisee continues to use the franchisor's marks, there is a substantial likelihood of confusion – in such circumstances, injunctive relief is a preferred remedy. See, e.g., Quizno's Master v. Kadriu, 2005 WL 948825, at *4-5 (N.D. Ill. Apr. 11, 2005). This is because customers reasonably assume that identical marks used in the same marketplace for the same services must originate from the franchisor or an authorized licensee. See, e.g., Burger King Corp. v. Mason, 710 F.2d 1480, 1492-93 (11th Cir. 1983) (post-termination use of franchisor's marks by former franchisee "invariably" creates confusion); Gorenstein Enters., Inc. v. Quality Care-USA, Inc., 874 F.2d at 435 (same).

Defendants' unauthorized use of Plaintiff's Marks not only infringes Plaintiff's federally protected trademark rights; it also undermines Plaintiff's ability to maintain uniform system standards and re-franchise the South Loop territory. Courts recognize that this type of brand dilution and loss of control over quality constitutes irreparable harm. See id. Because Defendants'

conduct squarely violates the Lanham Act and case law presumes both consumer confusion and irreparable injury, Plaintiff has established a clear likelihood of success on the merits of its trademark infringement claims.

  **B.** **Defendants Actions Have Caused Immediate, Concrete Harm to Plaintiff's Business Operations**

  To obtain a preliminary injunction, the movant must demonstrate that irreparable harm is likely to occur in the absence of an injunction and there is an inadequate remedy at law. In the Seventh Circuit, courts consider the irreparable harm and inadequate remedy at law elements of a preliminary injunction analysis together. Mechling v. Operator of Website Muaythaifactory.com, No. 21-cv-01538, 2021 WL 3910752, at *7 (N.D. Ill. Sept. 1, 2021) ("These two requirements – irreparable harm and no adequate remedy at law – tend to merge.") (citing Roland Mach. Co. v. Dresser Indus., Inc., 749 F.2d 380, 386 (7th Cir. 1984)). Irreparable harm is defined as harm that cannot be adequately remedied by monetary damages. See Abbott Labs. V. Mead Johnson & Co., 971 F.2d 6, 16 (7th Cir. 1992). The Seventh Circuit "ha[s] frequently said that trademark violations are irreparable, primarily because injuries to reputation and goodwill are nearly impossible to measure. In re A & F Enters., Inc. II, 742 F.3d 763, 769 (7th Cir. 2014). This is especially so in the context of a franchise relationship. See, e.g., Quizno's Master v. Kadriu, 2005 WL 948825, at *5-6.

  Moreover, "irreparable harm and inadequate remedy at law are presumed in trademark infringement cases in the Northern District of Illinois." Venus Lab'ys, 2015 WL 1058264, at *3 (N.D. Ill. Mar. 5, 2015); see also Rosati v. Rosati, No. 20-cv-07762, 2021 WL 3666432, at *11 (N.D. Ill. Aug. 18, 2021) ("It has long been the law of the Seventh Circuit that the lack of an adequate remedy at law and irreparable harm are generally presumed in trademark infringement actions.") (citing Eli Lilly & Co. v. Natural Answers, Inc., 233 F.3d 456, 469 (7th Cir. 2000); Venus Lab'ys, 2015 WL 1058264, at *11). The presumption that Plaintiff lacks an adequate

11

remedy at law and will suffer irreparable harm in this case finds further support in a recent amendment to the Lanham Act. Pursuant to 15 U.S.C. § 1116(a), a plaintiff seeking an injunction in a Lanham Act case "shall be entitled to a rebuttable presumption of irreparable harm upon a . . . finding of likelihood of success on the merits. . . ."

Here, Defendants' continued operation under the Skinovatio Marks creates precisely this type of harm. Consumers encountering "Skinovatio South Loop" are led to believe that the business is authorized by Plaintiff and operates under Plaintiff's standards. In reality, Defendants are no longer franchisees, are not subject to quality control, and are operating in open violation of their contractual and statutory obligations. Plaintiff thus loses control over its reputation and goodwill each day Defendants remain open under the Skinovatio name. Courts consistently find such loss of control to be irreparable. See Ty, Inc. v. Jones Group, Inc., 237 F.3d at 902 (irreparable harm presumed where trademark infringement likely); Promatek Indus., Ltd. v. Equitrac Corp., 300 F.3d 808, 813 (7th Cir. 2002) (damage to goodwill and reputation from unauthorized use of mark constitutes irreparable harm).

In sum, absent injunctive relief, Plaintiff will suffer ongoing and compounding loss of goodwill, customer confusion, and inability to re-franchise. These injuries are imminent, likely, and irreparable.

### C. The Balance of Harms Weighs in Favor of a Preliminary Injunction

"In evaluating the balance of harms, a sliding scale approach applies: the more likely the plaintiff's chance of success on the merits, the less the balance of harms need weigh in its favor and vice versa." Personeta, Inc. v. Persona Software, Inc., 418 F.Supp.2d 1013, 1020 (N.D. Ill. 2005). Moreover, "[i]n assessing the risk of irreparable harm to [defendant], the Court excludes any burden it voluntarily assumed by proceeding in the face of a known risk." Miyano Mach. USA, Inc. v. MiyanoHitec Mach., Inc., 576 F.Supp.2d 868, 888 (N.D. Ill. 2008), quoting Ty, Inc. v.

Jones Group, 237 F.3d at 895. This is especially so in the case of Lanham Act violations. See id.; see also Luxottica Grp. S.p.A. v. Light in the Box Ltd., 2016 WL 6092636, at *8 (N.D. Ill. Oct. 19, 2016) (same); Wesley-Jessen Div. of Schering Corp. v. Bausch & Lomb Inc., 698 F.2d 862, 867 (7th Cir. 1983) (failure to avoid trademark infringement meant defendant "cannot now complain that having to mend its ways will be too expensive [citations omitted]).

As established above, Plaintiff has a strong likelihood of success on the merits, which tips the balance of harms in its favor. See Personeta, Inc. v. Persona Software, Inc., 418, F.Supp.2d at 1020. Moreover, by continuing to operate using the Skinovatio Marks and franchise system, any potential harm to Defendants was entirely self-inflicted and, therefore, undeserving of consideration in this analysis. See Miyano Mach. USA, Inc. v. MiyanoHitec. Mach., Inc., 576 F.Supp.2d at 888; Luxottica Grp. S.p.A. v. Light in the Box Ltd., 2016 WL 6092636, at *8. By contrast, Plaintiff stands to suffer immeasurable harm by loss of control over its brand and franchise system. Accordingly, this factor weighs heavily in favor of injunctive relief.

        **D.**      **The Public Interest Will Be Served by Granting the Injunction**

The public interest will be served by granting Plaintiff's request for a preliminary injunction and temporary restraining order. "The purpose of the Lanham Act is to uphold trademarks in order to protect the public from deceit, foster fair competition, and to secure the business community the advantages of reputation and good will by preventing their diversion from those who have created them to those who have not." Super Wash, Inc. v. Sterling, 2006 WL 533362, at *3 (N.D. Ill. Mar. 2, 2006).

When a terminated franchisee continues to operate under the franchisor's Marks, the risk of public deception is acute. Customers patronizing "Skinovatio South loop" reasonably believe they are dealing with a location authorized and supervised by Plaintiff, when in fact Defendants have no right to use the Marks or system. This deception not only harms Plaintiff but also

13

undermines consumer confidence in the marketplace. By enjoining Defendants' unauthorized use of Plaintiff's Marks and enforcing their post-termination covenants, this Court will protect the public from confusion, safeguard fair competition, and preserve the integrity of the franchise system.

## IV.     BOND

Rule 65(c) provides that a preliminary injunction may issue "only if the movant gives security in an amount that the court considers proper." The amount is left to the Court's discretion. See Gateway E. Ry. Co. v. Terminal R.R. Ass'n of St. Louis, 35 F.3d 1134, 1141 (7th Cir. 1994) (bond is within the district court's sound discretion). The Seventh Circuit recognizes courts may set a modest bond when a non-movant faces little risk of compensable harm. See Monster Energy Co. v. Wensheng, 136 F.Supp.3d 897, 910 (N.D. Ill. 2015); Habitat Educ. Ctr. V. U.S. Forest Serv., 607 F.3d 453, 460 (7th Cir. 2010).

Here, any "harm" to Defendants would stem from enjoining unlawful post-termination conduct and unauthorized use of Plaintiff's Marks. Compensable damages are minimal. Plaintiff therefore requests that the Court require a nominal security. Accordingly, Plaintiff proposes a bond of $1,000 (or such other nominal amount the Court deems appropriate).

## V.     CONCLUSION

For the reasons set forth above, the Court should grant Plaintiff's Motion in its entirety.

Respectfully submitted,

Dated: November 13, 2025                 /s/ *George P. Apostolides*
                                          George P. Apostolides
                                          Bethany Beaver
                                          **SAUL EWING LLP**
                                          161 North Clark Street, Suite 4200
                                          Chicago, IL 60601
                                          (312) 876-7100
                                          Email: George.apostolides@saul.com
                                          Email: Bethany.beaver@saul.com

14

        Brett M. Buterick\*
        Thomas Emmons\*
        THE FRANCHISE FIRM LLP
        225 Wilmington West Chester Pike, Suite 200
        Chadds Ford, Pennsylvania 19317
        (215) 965-9499

        Email: brett@thefranchisefirm.com
        Email: tom@thefranchisefirm.com


        *Pro hac vice forthcoming*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 13, 2025, I electronically filed the foregoing Notice of Motion, and Motion for Preliminary Injunction and Request for Temporary Restraining Order with the Clerk of the Court for the United States District Court for the Northern District of Illinois by using the CM/ECF system.

I further certify that I caused a copy of the foregoing to be Notice of Motion, and Motion for Preliminary Injunction and Request for Temporary Restraining Order emailed to counsel indicating it is currently representing Defendants, Sorin Leahu, Esq. (sleahu@leahulaw.com).

Dated: November 13, 2025            /s/ *George P. Apostolides*
                                                 George P. Apostolides